United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SOLARPARK KOREA CO., LTD.,

Plaintiff,

v.

SOLARIA CORPORATION, et al.,

Defendants.

Case No. 23-cv-01181-AMO

**ORDER RE MOTION TO DISMISS**

Re: Dkt. No. 127

The partial motion to dismiss of Defendants The Solaria Corporation and Complete Solaria, Inc. (referred to collectively as "Solaria") was heard before this Court on February 12, 2026. Having read the papers filed by the parties and carefully considered their arguments therein and those made at the hearing, as well as the relevant legal authority, the Court **GRANTS the motion in part and DENIES it in part** for the following reasons.

I.      **BACKGROUND**

        A.      **Factual Background[1]**

                1.      **The Parties' Relationship**

        In 2015, Plaintiff SolarPark Korea Co. ("SolarPark") and Solaria began exploring a business partnership under which SolarPark would mass produce shingled solar modules designed by Solaria. First Amended Compl. (Dkt. No. 120, "FAC") ¶ 10. SolarPark and Solaria executed an Agreement to Manufacture on April 8, 2016 (the "2016 Agreement"). FAC ¶ 11. The 2016 Agreement contained a minimum purchase clause which required Solaria to purchase (i) "a total of

_____

[1] "On a motion to dismiss, a court accepts as true a plaintiff's well-pleaded factual allegations and construes all factual inferences in the light most favorable to the plaintiff." *Detwiler v. Mid-Columbia Med. Ctr.*, 156 F.4th 886, 893 (9th Cir. 2025) (citation omitted).

25 MWp for the first six (6) months of production" and (ii) "a minimum of 10 MWp per quarter for the remaining six (6) quarters."  FAC ¶ 12.

On October 6, 2018, SolarPark and Solaria entered into a Technology License Agreement (the "TLA") setting forth detailed licensing terms and conditions of their respective intellectual property ("IP").  FAC, Ex. B (Dkt. No. 120-2).

In April 2019, Solaria proposed expanding the partnership and ramping up production by adding three new production lines at SolarPark's factory dedicated to Solaria's products.  This expansion required SolarPark to invest approximately $60 million to install new production lines and also double its workforce.  FAC ¶ 15.  Solaria's proposal meant increasing production by approximately five times the minimum purchase requirement under the 2016 Agreement (i.e., over 200 MW per year).  FAC ¶ 16.  The expansion also meant that SolarPark would devote nearly its entire manufacturing capacity to Solaria's orders.  FAC ¶ 17.  On June 19, 2019, Solaria and SolarPark entered into an Agreement for Supply (the "2019 Agreement").  FAC ¶ 18.  Under Sections 2.2 and 3.4 of the 2019 Agreement, Solaria agreed to purchase a minimum volume of 224 MW per year (i.e., 164,656 modules per quarter) for five years through June 2024.  FAC ¶ 19.

To ramp up production as requested by Solaria, SolarPark had to (i) remove the existing equipment for standard modules, (ii) purchase and install new equipment for shingled modules, (iii) hire about 200 additional employees, and (iv) refurbish the production facilities to accommodate the new equipment and personnel.  FAC ¶ 20.  SolarPark anticipated that such an undertaking would require a capital investment of tens of millions of dollars.  *Id.*  As SolarPark could not afford such significant investment, the parties agreed to explore an alternative pricing scheme to account for the upfront costs.  *Id.*  To that end, Solaria and SolarPark executed the Solar Module Sales Agreement (the "MSA") on August 4, 2019.  FAC ¶ 21; FAC, Ex. A (Dkt. No. 120-1).  The MSA expressly superseded the 2016 Agreement, but not the TLA nor the 2019 Agreement.  FAC, Ex. A § 1.  The MSA provided that "[a]bsolute quantity conditions applied for each quarter" and that SolarPark would provide a volume discount if more than 164,656 modules were purchased each quarter (the "Absolute Quantity Conditions").  FAC, Ex. A § 5.2(c).

For three years following execution of the MSA, SolarPark filled all of Solaria's orders. FAC ¶ 26. Solaria, however, failed to meet the Absolute Quantity Conditions of 164,656 module orders per quarter throughout the period from 3Q 2019 to 1Q 2022. *Id.* As a result, SolarPark continued to suffer significant financial difficulties and was forced to shut down one of the two factories dedicated to producing Solaria's shingled modules temporarily on December 31, 2021. FAC ¶ 27.

On January 19, 2022, Solaria sent a letter to SolarPark purporting to terminate the MSA as of February 18, 2022. FAC ¶ 28. Although the parties thereafter negotiated a deal to resume production and compensate SolarPark for the losses caused by Solaria's failure to order minimum volumes, Solaria did not follow through. FAC ¶ 29.

On June 28, 2022, Solaria sent a letter to SolarPark purporting to terminate the TLA as of August 31, 2022. FAC ¶ 31.

On November 7, 2022, Solaria merged with Complete Solar to form Defendant Complete Solaria, of which Solaria became a wholly owned subsidiary. FAC ¶ 33. Complete Solaria began trading on Nasdaq on July 17, 2023. FAC ¶ 43. On September 20, 2023, Complete Solaria announced that it entered into an Asset Purchase Agreement with Maxeon Solar Technologies, Ltd., and sold off its shingled cell solar panel technology and dealer operations. *Id.* On September 24, 2024, Complete Solaria purchased certain assets from SunPower Corporation. FAC ¶ 44. On April 21, 2025, Complete Solaria announced its rebrand to SunPower and that its Nasdaq ticker would change to "SPWR." *Id.*

### 2. The SIAC Arbitration

Solaria commenced an arbitration against SolarPark before the Singapore International Arbitration Centre ("SIAC") in June 2022 (Case No. ARB160/22/WXZ; the "Arbitration"). FAC ¶ 40; Dkt. No. 127 at 9; Dkt. No. 32-2 ¶ 51. On July 30, 2022, SolarPark counterclaimed against Solaria for breach of the MSA and fraudulent inducement to enter into the MSA (collectively, the "Arbitration Claims"). FAC ¶ 40; Dkt. No. 127 at 9-10; Dkt. No. 115-5.

Solaria submitted its Statement of Claim in the Arbitration on February 10, 2023. Dkt. No. 127 at 10; Dkt. No. 32-2. SolarPark submitted its Statement of Defence and Counterclaim on

May 12, 2023.  Dkt. No. 32-3.  On November 15, 2023, after being compelled to arbitrate in this action, SolarPark, Solaria, and Complete Solaria reached an agreement to (i) arbitrate Counts III through VI in Plaintiff's original complaint (Tortious Interference with Contractual Relations against Complete Solaria, Inducement to Breach Contract against Complete solaria, Violation of California's Unfair Competition Law against all Defendants, and Civil Conspiracy against all Defendants), and (ii) join Complete Solaria as a party to the Arbitration.  Dkt. No. 127 at 10; Dkt. No. 103-6.  On December 15, 2023, SolarPark submitted in the Arbitration its Statement of Rejoinder and Reply to Counterclaims, in which SolarPark added Counts III through VI of the original complaint to its counterclaims pursuant to the Parties' agreement.  Dkt. No. 127 at 10; Dkt. No. 103-7.  On February 16, 2024, Solaria submitted in the Arbitration their Rejoinder to Counterclaims and Response to Additional Claims, in which Solaria pleaded their defenses to both the Arbitration Claims and Counts III through VI.  Dkt. No. 103-9.

Both SolarPark and Solaria failed to pay their respective portions of the SIAC fees.  Dkt. No. 103-3 at 4; Dkt. No. 113-3 at 2, 6, 10, 17; Dkt. No. 105-11 at 2; Dkt. No. 105-14.  Due to the nonpayment, on June 26, 2024, the SIAC Registrar notified the parties that their claims and counterclaims were considered withdrawn without prejudice to the Parties reintroducing them in another proceeding.  Dkt. No. 127 at 5; Dkt. No. 103-18; *see also* SIAC Rule 34.6(b) (Dkt. No. 48-2 at 37) (permitting registrar to deem claims withdrawn without prejudice due to the litigants' nonpayment of deposits).  On July 1, 2024, the SIAC Tribunal confirmed the withdrawal of claims and counterclaims.  Dkt. No. 127 at 5; Dkt. No. 103-13.  On November 18, 2024, the SIAC Registrar notified the parties regarding the final settlement of their accounts.  Dkt. No. 103-20.

### B.    Procedural History

SolarPark initiated this lawsuit on March 16, 2023.  Dkt. No. 1.  In May 2023, SolarPark filed a motion for preliminary injunction, Dkt. No. 28, after which Solaria filed a motion to dismiss, Dkt. No. 32.  Both motions were heard and decided together.  *See* Dkt. No. 68.  The Court granted in part and denied in part SolarPark's motion for preliminary injunction, granted SolarPark's request for expedited discovery, denied Solaria's motion to dismiss, and granted Solaria's request to stay the case pending the outcome of the SIAC Arbitration.  *Id.*

In early 2025, the parties provided a status report that stated they were discussing next steps in this case following SIAC's dismissal of their arbitration. *See* Dkt. No. 99. SolarPark filed a motion to lift the stay and to amend the complaint in July 2025. Dkt. No. 104. The Court granted the motion to lift the stay and for leave to amend on August 14, 2025. Dkt. No. 119.

SolarPark filed its FAC on August 28, 2025. Dkt. No. 120. Solaria filed the instant motion to dismiss portions of the FAC on October 14, 2025. Dkt. No. 127.

## II.    DISCUSSION

Solaria's partial motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) seeks to dismiss Count II (breach of contract against Solaria), Count III (fraudulent inducement against Solaria), Count IV (tortious interference with contractual relations against Complete Solaria), and Count V (injunctive relief against all Defendants) of the FAC. *See* Dkt. No. 127 (leaving untouched Count I, misappropriation of trade secrets). Defendants' bases for the motion are three-fold: (1) that SolarPark's breach of contract claim and fraudulent inducement claim are time-barred; (2) that SolarPark has not plead sufficient facts for Counts II, III, and IV; and (3) that Count V for injunctive relief does not reflect a real cause of action. After setting forth the legal standard, the Court takes up these arguments in turn.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal sufficiency of the claims alleged in the complaint. *Ileto v. Glock*, 349 F.3d 1191, 1199-1200 (9th Cir. 2003). Under Federal Rule of Civil Procedure 8, which requires that a complaint include a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), a complaint may be dismissed under Rule 12(b)(6) if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support a cognizable legal theory. *Somers v. Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013).

While the court is to accept as true all the factual allegations in the complaint, legally conclusory statements, not supported by actual factual allegations, need not be accepted. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The complaint must proffer sufficient facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 558-59 (2007) (citations and quotations omitted). "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Id.* at 679.

Review is generally limited to the contents of the complaint, although the court can also consider a document on which the complaint relies if the document is central to the claims asserted in the complaint, and no party questions the authenticity of the document. *See Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). The court may consider matters that are properly the subject of judicial notice, *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001), and may also consider documents referenced extensively in the complaint and documents that form the basis of the plaintiffs' claims. *See No. 84 Emp'r-Teamster Jt. Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 925 n.2 (9th Cir. 2003).

If dismissal is warranted, it is generally without prejudice, unless it is clear that the complaint cannot be saved by any amendment. *Sparling v. Daou*, 411 F.3d 1006, 1013 (9th Cir. 2005). "Leave to amend may also be denied for repeated failure to cure deficiencies by previous amendment." *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008).

### A.    Timeliness

SolarPark alleges breaches of the MSA, which was executed in August 2019, and which is governed by New York law. *See* Dkt. No. 120-1, MSA § 18.3. Solaria argue that SolarPark's breach of contract claim, Count II, is barred by the four-year limitation period under New York U.C.C. § 2-725, and that the fraudulent inducement claim (Count III) is barred under New York C.P.L.R. § 213(8). Dkt. No. 127 at 16-18.

Under New York law, the statute of limitations for breach of contract is four years from when breach occurs, regardless of whether SolarPark had knowledge of the breach at the time it purportedly occurred. N.Y. U.C.C. Law § 2-725 (McKinney). New York Civil Practice Law and Rules ("N.Y.C.P.L.R.") § 204(b) tolls statutes of limitations while claims are presented for arbitration and provides,

6

> Where it shall have been determined that a party is not obligated to submit a claim to arbitration, the time which elapsed between the demand for arbitration and the final determination that there is no obligation to arbitrate is not a part of the time within which an action upon such claim must be commenced. The time within which the action must be commenced shall not be extended by this provision beyond one year after such final determination.

SolarPark's breach of contract and fraudulent inducement claims were "originally raised in the SIAC Arbitration" in its Response to the Notice of Arbitration submitted in July 2022. Dkt. No. 127 at 6, 11, 24. Solaria does not contend the claims were untimely when submitted in July 2022. Rather, it argues that the tolling provisions of N.Y.C.P.L.R. § 204(b) do not apply to the period when the parties were engaged in arbitration because "[t]he purpose of CPLR 204 (b) is to preserve a remedy to a litigant who has mistaken his forum," not to preserve claims properly submitted to arbitration in the first instance. *See* Dkt. No. 130 at 12 (quoting *Provenzano v. Ioffe*, 784 N.Y.S.2d 138, 140 (2004)). However, *Provenzano* does not stand for such a limited interpretation of the tolling available to litigants while they present their claims for arbitration pursuant to a valid arbitration agreement; rather, "[t]he function of CPLR 204(b) is similar to that of CPLR 205. The two provisions serve to extend the time for commencing a second action after a timely action has been terminated in a manner other than by voluntary discontinuance, a dismissal for neglect to prosecute, or a final judgment on the merits." *Provenzano*, 12 A.D.3d at 355 (citing *Bright v. Pagan*, 236 A.D.2d 350, 351 (1997)). In this case, SolarPark's breach of contract and fraudulent inducement claims were originally and timely raised in the SIAC Arbitration through its Response to the Notice of Arbitration submitted in July 2022. *See* FAC ¶ 40; Dkt. No. 127 at 9-10; Dkt. No. 115-5. According to N.Y.C.P.L.R. § 204(b), the statute of limitations periods applicable to SolarPark's breach of contract and fraudulent inducement claims were tolled from July 2022, when SolarPark first submitted those claims in the Arbitration, to August 14, 2025, when the Court granted SolarPark's motion to amend. N.Y.C.P.L.R. § 204(b); *see also Perez v. Paramount Commc'ns, Inc.*, 92 N.Y.2d 749, 755-56 (1999) (holding that filing a motion for leave to amend the complaint was "sufficient to toll the statute of limitations" until the court's order granting the motion). Therefore, SolarPark's breach of contract and fraudulent inducement claims are timely.

Solaria contends that the Arbitration does not toll the statute of limitations period because, under the holding in *Stewart v. Acer, Inc.*, No. 22-CV-04684-VC, 2023 WL 1463413 (N.D. Cal. Feb. 1, 2023), tolling is only available if arbitrable claims are "first brought in the district court, the district court case is stayed, and then the stay is lifted." Dkt. No. 127 at 17-18.  Solaria misreads *Stewart*.  The *Stewart* court held instead that statute of limitations periods are often tolled "when parties pursue dispute resolution via arbitration before ever filing a suit in court." *Stewart*, 2023 WL 1463413, at *1.  Indeed, the court's reasoning remains particularly relevant here, where it stated,

> [I]t is not clear why a statute of limitations period wouldn't remain tolled while a dispute is with an arbitrator.  Statute of limitations periods are often tolled, at least in certain contexts, when parties pursue dispute resolution via arbitration before ever filing a suit in court. . . .  So long as they filed a timely lawsuit in the first place, it's difficult to imagine a basis for rejecting a tolling argument for the period it takes for an arbitrator to conclude that the case is not subject to arbitration.

*Stewart*, 2023 WL 1463413, at *1 (internal quotation marks and citation omitted).  The same rationale applies with equal force to the present circumstances – it is not clear why a statute of limitations would not remain tolled while the parties timely pursued their claims in arbitration in accordance with their prior agreements in the MSA and TLA.[2]  *See* FAC, Exs. A & B.

Solaria argues further that the applicable statute of limitations was not effectively tolled because the withdrawal of the SIAC Arbitration was voluntary or due to neglect to prosecute.  Not so.  SolarPark's claims in the Arbitration were deemed as withdrawn not due to voluntary discontinuance, neglect to prosecute, or a final judgment on the merits, but due to both SolarPark's and Solaria's respective failures to pay the SIAC fees.  Dkt. No. 103-3 at 4; Dkt. No. 113-3 at 2, 6, 10, 17; Dkt. No. 105-11 at 2; Dkt. No. 105-14.  Though not resolved on the merits, SIAC resolved the matter pursuant to its rules by closing the Arbitration due to nonpayment.  *See* MSA (FAC, Ex. A) § 18.4; *see also* SIAC Rule 34.6(b) (Dkt. No. 48-2 at 37) (permitting registrar to deem claims

---

[2] Solaria's arguments that the arbitration did not effectively toll SolarPark's breach and fraudulent inducement claims are difficult to credit in light of Solaria's successful effort to stay this action during the pendency of the arbitration.  *See* Dkt. No. 32 (Solaria's motion to stay); Dkt. No. 68 (order staying case).

United States District Court
Northern District of California

withdrawn without prejudice due to the litigants' nonpayment of deposits).  Therefore, the Arbitration was "had in accordance with the terms of the [arbitration] agreement." *Tillman v. Tillman*, 825 F.3d 1069, 1074 (9th Cir. 2016) (holding that an arbitration had been "had" in accordance with the Federal Arbitration Act ("FAA") despite the arbitration's termination by AAA due to unpaid deposits); *see also Lifescan, Inc. v. Premier Diabetic Servs., Inc.*, 363 F.3d 1010, 1013 (9th Cir. 2004) ("Under the terms of the FAA, there was no 'failure, neglect, or refusal' by Premier to arbitrate in this case; the arbitration has proceeded pursuant to the parties' agreement and the rules they incorporated.").  Solaria fails to establish that the statutory tolling of SolarPark's breach of contract and fraudulent inducement claims, first raised in the Arbitration, should not apply here.

Because the Court concludes that the applicable limitations periods were effectively tolled while the parties engaged in arbitration, it need not reach SolarPark's alternative arguments regarding timeliness, including that the claims were in fact timely under New York law because the contract involved services rather than sale of goods (services contracts have a longer limitations period) and that the doctrine of "relation back" to the original complaint preserved these claims under Federal Rule of Civil Procedure 15(c).

### B.   Sufficiency of Allegations

Solaria argues that the FAC fails to state a claim upon which relief can be granted for Count II (breach of contract against Solaria), Count III (fraudulent inducement against Solaria), and Count IV (tortious interference with contractual relations against Complete Solaria).  It further argues that injunctive relief should be dismissed as a separate cause of action because it is instead a form of potential relief.  The Court examines each claim in turn.

#### 1.   Breach of Contract

The elements of breach of contract under New York law are "(1) the existence of a contract between itself and that defendant; (2) performance of the plaintiff's obligations under the contract; (3) breach of the contract by that defendant; and (4) damages to the plaintiff caused by that

//

//

9

defendant's breach." *Diesel Props S.r.l. v. Greystone Business Credit II LLC*, 631 F.3d 42, 52 (2d Cir. 2011).[3]

On the first element, Solaria does not contest the validity of the MSA as a contract. Dkt. No. 32 (first motion to dismiss) at 1.

Solaria argues that SolarPark fails to satisfy the second prong on the basis that SolarPark fails to fully allege performance of its obligations under the contract. Dkt. No. 127 at 13. But SolarPark's allegation that "Plaintiff performed its obligations under the MSA by fulfilling all of Solaria's orders without fail" is sufficient to plead plaintiff's performance under the contract. *See* FAC ¶ 55; *JTRE Manhattan Ave. LLC v. Cap. One, N.A.*, 585 F. Supp. 3d 474, 482 (S.D.N.Y. 2022) (holding the allegation "in all material respects [the plaintiff] complied with its obligations under the Lease" was sufficient to allege plaintiff's performance). To the extent Defendants counter that SolarPark failed to fulfill its contractual obligations, its closure of one of the two factories dedicated to manufacturing Solaria's shingled modules does not mean that SolarPark had "failed its obligations . . . to supply shingled solar modules to Solaria." Dkt. No. 127 at 16; *cf.* FAC ¶ 27. SolarPark sufficiently alleges performance of its allegations under the contract.

Defendants argue further that SolarPark fails on the fourth prong because SolarPark fails to plausibly allege damages in the amount of $82 million. Dkt. No. 127 at 13-14 (challenging sufficiency of allegation, "[d]ue to Solaria's breaches, Plaintiff was harmed as it was denied the profit that it would have earned had the MSA been performed fully. Plaintiff is entitled to compensatory damages in an exact amount to be proven at trial but not less than $82 million," FAC ¶ 59). However, SolarPark's damages allegation is sufficient for the purposes of stating a claim for breach of contract, as SolarPark's burden at this stage is to plead facts that demonstrate it

---

[3] As noted above, SolarPark's claim for breach of contract is governed by New York law, the governing law of the MSA. FAC ¶ 54; *see also* MSA § 18.3 (Dkt. No. 120-1 at 19) (stating in all-caps that the agreement shall be "governed by and construed in accordance with the laws of the State of New York, U.S.A."). Defendants base their motion exclusively on Ninth Circuit cases applying California law, however, and they fail to demonstrate why the FAC's pleading is insufficient under New York law. *See* Dkt. No. 127 at 12-16 (citing *Langan v. United Servs. Auto. Ass'n*, 69 F. Supp. 3d 965 (N.D. Cal. 2014)); *Levitt v. Yelp! Inc.*, 765 F.3d 1123 (9th Cir. 2014); *Brown v. U.S. Bancorp*, No. CV116125CASPJWX, 2011 WL 13221011 (C.D. Cal. Dec. 19, 2011)). Defendants' arguments accordingly lack legal support, and the Court could deny the motion to dismiss this cause of action on this basis. Nonetheless, the claim survives on its merits.

10

United States District Court
Northern District of California

suffered damages, not necessarily the amount it seeks. *See Meng v. New Sch.*, 686 F. Supp. 3d 312, 321 (S.D.N.Y. 2023) ("To state a claim for breach of contract, the damages a plaintiff alleges . . . must be reasonably certain, and such only as actually follow or may follow from the breach of the contract.  However, certainty, as it pertains to general damages, refers to the fact of damage, not the amount.  When it is certain that damages have been caused by a breach of contract, and the only uncertainty is as to their amount, there can rarely be good reason for refusing, on account of such uncertainty, any damages whatever for the breach.") (internal quotation marks and citation omitted).  Even if SolarPark were required to offer support of the amount of damages it seeks, it has done so by highlighting a quantum expert report that was submitted in the Arbitration – a report which Defendants received in December 2023 and extensively addressed in their responsive submission in February 2024.  Dkt. No. 103-7, ¶¶ 128-131 at 45-48; Dkt. No. 103-9, ¶¶ 262-302 at 60-69.  Solaria, having reviewed the expert report underlying SolarPark's asserted damages, may disagree with the sum calculated, but such disagreement does not invalidate SolarPark's claim that it has been damaged as a result of the alleged breach of contract.

Solaria proceeds to challenge SolarPark's contentions of breach as to each of the MSA provisions identified in the FAC.  SolarPark sufficiently identifies not only the specific provisions breached (§§ 5.2.c, 5.3, 18.10, and 14.10), but also how Solaria allegedly breached those provisions.  FAC ¶¶ 56-58 at 12-13.  Defendants' challenges to these allegations are defenses to the claim of breach, essentially Defendants' own competing interpretations of the MSA provisions rather than a demonstration that no breach occurred.  Dkt. No. 127 at 13-16.  For example, Defendants aver that their obligation to perform was excused by SolarPark's failure to perform when it closed one of its production facilities, but this dispute requires resolution of factual disputes and competing interpretations of the agreement.  *Compare* Dkt. No. 127 at 16 *with* Dkt. No. 128 at 21.  Defendants' alternative interpretations of the MSA do not require resolution at the Rule 12(b)(6) stage.  *Lamoureux v. Trustco Bank*, 592 F. Supp. 3d 14, 27 (N.D.N.Y. 2022) ("Courts may dismiss breach-of-contract claims on a Rule 12(b)(6) motion to dismiss where the language is 'clear and unambiguous'; however, 'a plaintiff's claim should not be dismissed if she

11

'has an arguable claim under the contract.' " (citations omitted)).  Therefore, SolarPark has sufficiently alleged its claim for breach of contract, and the motion must be denied as to this cause of action.

### 2.      Fraudulent Inducement

To state a claim for fraudulent inducement, a plaintiff must adequately allege "(1) that the defendant made a representation, (2) as to a material fact, (3) which was false, (4) and known to be false by the defendant, (5) that the representation was made for the purpose of inducing the other party to rely upon it, (6) that the other party rightfully did so rely, (7) in ignorance of its falsity (8) to his injury." *Duckett v. Williams*, 86 F. Supp. 3d 268, 274 (S.D.N.Y. 2015).  Moreover, a fraudulent inducement claim is subject to the heightened pleading standards of Rule 9(b) of the Federal Rules of Civil Procedure, which require "a party to state with particularity the circumstances constituting fraud or mistake." *Id.* ("the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent" (citations omitted)); Fed. R. Civ. P. 9(b).

SolarPark alleges Solaria fraudulently induced SolarPark to enter the MSA by making representations that it intended to "ramp up" production and would agree to minimum purchase commitments.  FAC ¶ 62.  In so alleging, SolarPark fails to identify the specific speaker of the alleged statements or where and when they were made, as required under Rule 9(b).  SolarPark further fails to identify what specific statements were made beyond general assertions that Solaria represented that it intended to "ramp up" production and would agree to minimum purchase commitments.  *See* FAC ¶ 62.  Such general allegations fail as insufficient to establish fraudulent inducement.

In its opposition, SolarPark points to its allegations regarding the parties' conduct leading up to execution of the MSA, including Defendants' commitment to make a minimum purchase volume.  *See* Dkt. No. 128 at 22 (citing FAC ¶¶ 15-21, 62).  This portion of the FAC does not present any additional factual support for the fraudulent inducement allegations; rather, they suggest that Defendants committed to purchase a minimum threshold in their contract and that

United States District Court
Northern District of California

Defendants failed to live up to that commitment. Such a factual circumstance reflects a potential breach of contract, not fraudulent inducement, particularly where there is no sign of falsehood or misrepresentation. Therefore, the motion must be granted as to this claim, but with leave to amend.

### 3.    Tortious Interference

SolarPark alleges that Complete Solaria tortiously interfered via two sets of actions: first, "making a clean slate for Solaria was a precondition for a contemplated merger" and second, by allegedly disclosing "SPK Manufacturing IP." FAC ¶¶ 31, 37. Specifically, SolarPark alleges that Complete Solaria tortiously interfered by "inducing Solaria to terminate the existing contracts," "preventing Solaria from executing the [letter of intent] to continue to perform under the MSA and the TLA," and "disclosing or instructing the disclosure of Plaintiff's Manufacturing IP and other confidential information to third parties." FAC ¶ 69. Defendants argue that SolarPark fails to plead its tortious interference claim against Complete Solaria because Complete Solaria (i) "was not formed until November 2022" and (ii) "was not a disinterested third party." Dkt. No. 127 at 21-27.

"Under California law, the elements for the tort of intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *United Nat. Maint., Inc. v. San Diego Convention Ctr., Inc.*, 766 F.3d 1002, 1006 (9th Cir. 2014).

SolarPark's claim cannot survive because Complete Solaria was not formed until November 7, 2022. FAC ¶ 33. This was (i) after the working relationship between Solaria Corp. and SolarPark ended, (ii) after Solaria Corp. had initiated arbitration against SolarPark, and (iii) after SolarPark responded to the Notice of Arbitration. FAC ¶ 33. SolarPark offers no factual grounds or explanation how Complete Solaria could have tortiously interfered with a contractual relationship before Complete Solaria existed. Instead, SolarPark alleges that Complete Solaria "induc[ed] Solaria to terminate the existing contracts" and "prevent[ed] Solaria from executing" a

13

United States District Court
Northern District of California

letter of intent for the parties to reengage in their manufacturing partnership.  FAC ¶ 69. SolarPark fails to identify any cases in which an entity faced liability for tortious interference with contract prior to the entity's existence, and therefore, the claim for tortious interference generally fails.

Though SolarPark presents an alternative theory in its opposition brief, that Complete Solaria could be held liable for the tortious interference of Solaria as corporate successor, that theory also fails because the necessary element of a third party would still be missing from the allegations.  *See* Dkt. No. 128 at 24.  "[T]he tort duty not to interfere with the contract falls only on strangers – interlopers who have no legitimate interest in the scope or course of the contract's performance."  *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 514 (1994). Raising successor liability cuts directly against the viability of a tortious interference claim: the very actors whose conduct SolarPark seeks to impute to Complete Solaria – Solaria's corporate insiders and affiliates – are, by definition, not "strangers" to the contracts.  Once formed, Complete Solaria was so closely aligned with Solaria Corp. that it could not be considered a disinterested third party under California law.  *See LP Ins. Servs., LLC v. Heffernan Ins. Brokers*, 2025 WL 2097466, at *3 (N.D. Cal. July 25, 2025) ("a party cannot commit the tort of interfering with their own contract" (citing *Applied Equip.*, 7 Cal. 4th at 514)).  The FAC fixes all operative conduct before November 2022, when Complete Solaria did not exist, and the actors it identifies were non-strangers with a direct contractual interest, and fail as a matter of law.  Therefore, the claim for tortious interference must be dismissed with prejudice.

#### 4.     Injunctive Relief

SolarPark pleads a separate cause of action, its fifth, for "Injunctive Relief."  FAC ¶¶ 72-77.  Solaria argues that this separate claim for injunctive relief should be dismissed with prejudice because "injunction is a remedy, not a separate claim or cause of action."  Dkt. No. 127 at 27-28. In opposition, SolarPark points to *Minkley v. Eureka City Schools*, in which the court held, "[a]s a potential remedy, not a stand-alone claim, [injunctive relief] is not subject to dismissal under Rule 12(b)(6) for 'failure to state a claim upon which relief can be granted.' "  Dkt. No. 128 at 25 (quoting *Minkley*, No. 17-CV-3241-PJH, 2017 WL 4355049, at *16 (N.D. Cal. Sept. 29, 2017)).

In response, Solaria points to *Saloojas, Inc. v. Aetna Health of California, Inc.*, in which the court held, "[a]n injunction is a form of relief, not a substantive claim creating liability. [Citation].  It may properly appear in a complaint's prayer for relief, not as a claim or cause of action.  Accordingly, Defendant's motion to dismiss this claim is granted, without leave to amend."  *See Saloojas*, No. 22-CV-02887-JSC, 2022 WL 4775877, at *5 (N.D. Cal. Sept. 30, 2022); *see also* Dkt. No. 130 at 20 (citing the same).

The Court agrees with Solaria.  SolarPark is not entitled to proceed with a separate cause of action for injunctive relief even if SolarPark continues to seek injunctive relief as a remedy.  The motion must be granted as to the fifth cause of action for injunctive relief with prejudice; and to the extent injunctive relief appears in the FAC's prayer for relief, it will not be dismissed or stricken.

## III.    CONCLUSION

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** Defendants' motion to dismiss.  The motion is DENIED as to SolarPark's claim for breach of contract; the motion is GRANTED as to SolarPark's claims for fraudulent inducement, tortious interference, and separate claim for injunctive relief.  SolarPark may file a second amended complaint within 28 days from the date of this Order – SolarPark may amend the claim for fraudulent inducement but not the claims for tortious interference or injunctive relief.  No new claims or parties may be added to the amended pleading without leave of Court or stipulation of Defendants.

**IT IS SO ORDERED.**

Dated: April 8, 2026

_____
**ARACELI MARTÍNEZ-OLGUÍN**
**United States District Judge**